2 Abb. 261–DISTINGUISHED, 48 Superior 191.

Watt *a.* Rogers.

another trial the plaintiff might produce proofs which would entitle him to recover.

If we had a discretionary control over judgments in the Marine Court, with a power to order a new trial whenever we believed the ends of justice would be promoted by it, we might with propriety hear the parties on that question.

But the legislature have not conferred upon us any such discretion; unless the judgment was obtained by default we can only reverse for error, and though we may regret that the plaintiff did not produce further proof on the trial there, we do not perceive how it is in our power to relieve him.

I think we are compelled to deny the motion, but as the language of the opinion pronounced by the court has led the plaintiff to submit his motion, the motion should be denied without costs to either party.

---

## WATT *a.* ROGERS.

*New York Common Pleas; Special Term, October,* 1855. [*]

INJUNCTION.—STAY OF PROCEEDINGS.—EQUITABLE RELIEF.

Where the equitable title is in one, and the legal title and possession was in another who conveyed, and his grantee brings an action of trespass against the equitable owner, the latter cannot set up his equitable title as a defence in such action, but must resort to an action against the grantor.

An injunction may be granted to restrain proceedings on judgment; and in many cases this course is preferable to granting an order in the suit sought to be stayed.

It is in the discretion of the court to decree a specific performance.

Such a decree will only be made where it is strictly equitable to make it. The court will give no aid to a party who is himself in default of performance of the contract on his own part, unless he satisfactorily excuses his default.

Motion to dissolve an injunction.

This action was brought by Archibald Watt against Platt Rogers, William Ogilvie, and Daniel H. Curtis. The complaint set forth that previous to and in the year 1839, he was

the owner of thirty-one lots of ground in the city of New York ; that in 1839 he entered into an agreement with the defendant Platt Rogers, for the sale of these lots to him ; that in 1840 Rogers having become dissatisfied with the title, and desirous to rescind the purchase, the plaintiff agreed to purchase the lots in question from him for $4787.95, of which $1768.62 was paid by the plaintiff to Rogers at the time, and the balance, $3019.33, was agreed to be paid in 1845, the plaintiff giving his bond for such payment ; that the plaintiff remained in possession of the lots ; that in 1850 Rogers, in fraud of the plaintiff's rights under the agreement, sold and conveyed the lots in question to the defendant, William Ogilvie, for $2000 ; that this was a very inadequate consideration ; that Ogilvie immediately afterwards sold and conveyed seven of the lots to the defendant, Daniel H. Curtis ; that no notice of these sales and conveyances was given to the plaintiff, and no demand of possession was made upon him ; that he being in possession sold some portion of the soil of said lots, to persons who carried away the same ; that in April, 1853, the defendants Ogilvie and Curtis each commenced a suit against the plaintiff in the Common Pleas for trespass in taking away said soil ; that judgments were rendered against the plaintiff in both suits, on the ground that the title acquired by the plaintiff under his agreement with Rogers could only be enforced in equity, and could not be set up as a bar in the action ; that plaintiff appealed from these judgments to the General Term ; and, that the plaintiff had always been and still was willing to perform his part of the contract between himself and Rogers.   The prayer of the complaint was, that Rogers might be compelled to make specific performance of his agreement to sell and convey the lots to the plaintiff, on being paid by the plaintiff what was due under the agreement,—that the sale made by Rogers to Ogilvie might be set aside,—and that the defendants Ogilvie and Curtis might be enjoined from further proceedings to enforce the judgments recovered by them against the plaintiff.

A temporary injunction was granted, which the defendants now moved to dissolve.

One objection taken was, that instead of the words " infor-

Watt *a.* Rogers.

mation and belief," required by the Code in the verification
of pleadings, the verification in this case contained the words
" information *or* belief."

*D. T. Walden*, for the motion.—I. A *fully* verified com-
plaint may be used instead of the affidavit required by section
220 of the Code. (1 *Whitt. Pr.* 261, and cases cited).   But this
complaint is not verified as required by the Code.   It is on
" information *or* belief," it should be in the conjunctive. (*Code*
§ 157;  Davis *v.* Potter, 4 *How. Pr. R.* 155).   It was not suf-
ficient to be used as an affidavit.

II. A temporary injunction can only be  granted where the
relief demanded is in whole or in part a perpetual injunction.
(*Code*, § 219;  Corning *v.* The Troy Iron Nail Factory, 6
*How Pr. R.*, 89;  Hovey *v.* McCrea, 4 *Ib.* 31;  *Voorhies'*
*Code*, 230, *note*).

III. An injunction will not be granted in one suit to stay
proceedings in another;  the proper course is to make applica-
tion in the suit sought to be stayed, for a stay of proceedings.
(Diedericks *v.* Hoysradt, 4 *How. Pr. R.*, 350;  Hunt *v.* The
Farmer's Loan and Trust Company, 8 *Ib.*, 416;  Grant *v.*
Quick, 5 *Sandf.*, 612;  *Voorhies' Code*, 229;  1 *Whitt. Pr.*,
255).

IV. Injunction will not be granted to stay proceedings at
law, where the matters set up constitute a defence which
might have been set up in the action at law. (*Story's Eq.*
*Jur.*, §§ 894, 895, 896;  2 *White & T. Eq. Cas.* (*Am. Law.*
*Lib.*), 88–98;  Bay *v.* Canning, 19 *Verm. R.*, 496;  McVickar
*v.* Walcott, 4 *Johns.* 510;  Duncan *v.* Lyon, 3 *Johns. Ch.*,
351;  Barker *v.* Elkins, 1 *Ib.*, 465;  Lansing *v.* Eddy, *Ib.*, 49;
Smith *v.* Lowry, *Ib.*, 320;  Dodge *v.* Strong, 2 *Ib.*, 228;
Murray *v.* Graham, 6 *Paige*, 622;  Perrin *v.* Stryker, 7 *Ib.*,
598;  Harrison *v.* Davenport, 2 *Barb. Ch. R.*, 77;  Vilas *v.*
Jones, 1 *Comst.*, 274;  Foster *v.* The State Bank, 17 *Ala. R.*,
672).   The present plaintiff could have availed himself, in the
actions at law, of any defence, whether legal or equitable.
(*Code*, § 150).   The grounds for the relief claimed against the
defendants Ogilvie and Curtis' judgments are,—that plaintiff
had an equitable title and rightful  possession, and that defen-

dants had not title at the time of bringing suit.  These facts, if true, could have been set up in defence to the actions.

V. It is apparent from the complaint that plaintiff is not entitled to the relief sought.  1. There is no allegation of performance or tender of performance, on the part of the plaintiff, of his agreement with the defendant Rogers.  2. More than ten years have elapsed since the claim accrued, and it is barred by the Statute of Limitations then in force, (2 *Rev. Stats.* 2 *ed.*, 229, § 52), under which actions of equitable cognizance were barred at the lapse of ten years.

*A. E. Coren*, opposed.—I. The objection to the verification of the complaint may be cured by substituting " and " for " or."

II. The complaint does not pray for a perpetual injunction, because, if the plaintiff succeeds in this action, and Rogers is decreed to perform his agreement with the plaintiff, and the conveyance from Rogers to Ogilvie is set aside, a perpetual injunction will not be needed.  The court, under the prayer for further relief, will vacate the judgments.

III. Rogers was not a party to the suits brought by Ogilvie and Curtis, against the plaintiff, and the plaintiff could not have the relief against him in those actions which he seeks in this.  He did not omit to set up in those actions what he conceived to be a good defence to them, under section 150 of the Code ; *viz :* That neither Ogilvie nor Curtis had title to the lots, or possession of them.  But the Court ruled out the defence on the ground that the plaintiff,—then defendant,—could not set up his equitable rights against Rogers, in an action brought against him by a grantee of Rogers for a trespass.  The question between Rogers and the present plaintiff, could not be tried in these actions.

IV. The plaintiff's right of action only accrued on the breach by Rogers of his agreement with the plaintiff, by the sale of the lots to Ogilvie, in 1850.

V. The injunction should be allowed to stand until the coming in of the defendant's answer, when the Court will have the statement of each party before it.  The equities of the complaint are not denied as yet.

DALY, J.—The defect in the verification is one that might be cured by allowing the plaintiff to verify anew, if he were otherwise entitled to an injunction.

The ground of action relied upon in the present suit, could not have been set up in the actions brought against the plaintiff by Ogilvie and Curtis. The parties there were different. There the land was shown to have been unoccupied, and the legal title being in the plaintiffs, and the title drawing to it the possession, Watt, the plaintiff in this, and the defendant in those actions, was held to be a trespasser by entering upon it. This action is brought to compel a specific performance of the agreement made by Rogers to convey the land to Watt, and we held in those suits that the rights acquired by Watt under that agreement constituted no defence against the legal title which rested in the plaintiffs, under the conveyances made to them by Rogers.

Nor is there any objection to restraining the plaintiffs by an injunction in this action from proceeding to enforce the payment of their judgment, if the plaintiff has disclosed a case which entitles him to relief. He is not compelled to move in those actions for a stay of proceedings. The questions involved in them have been settled, and the legal rights of the parties as litigating them, determined by judgment. All that is necessary in respect to them to protect the rights of the plaintiff here, is to order all proceedings under them to be stayed, until this suit is determined, which order may as well be granted in the form of an injunction here, as in the shape of an order to stay proceedings, to be made upon a motion in those actions. The motion for the injunction here is upon notice to the other party. He has appeared, and can set up every thing in resisting the motion for the injunction that he could set up in opposition to a motion for a stay of proceedings. It is not only more convenient to consider the question upon the plaintiff's complaint in this action, which discloses all the facts, instead of compelling him unnecessarily to make a long affidavit for the purpose of such a motion, but as he is compelled by the statute (2 *R. S.* 3 *Ed.* 251), if an injunction like this is granted, to give a bond to secure the amount of the judgment, or to deposit the amount in court,

which he need not be obliged to do in getting a stay of proceedings upon the judgment unless the court should require it, the form of proceeding affords a great protection to the plaintiff in the judgment, and I think it very probable, that for that reason alone, the court, if asked to stay proceedings upon the judgment, would refuse it upon the ground that the party should apply for an injunction, and give the security required by the statute.

But the plaintiff has not shown by his complaint that he is entitled to the equitable relief asked. The contract, a specific performance of which is sought to be enforced, was entered into in 1842. A part of the consideration was acknowledged to have been received, and the plaintiff agreed to pay the residue, $3019 33, upon the 7th of March, 1845, upon the receipt of which the defendant Rogers agreed to convey the land. It does not appear by the complaint, that the defendant was ever called upon to perform, or that the plaintiff ever offered to pay, or tendered to him the $3019 33, but he rests his equity entirely upon the fact, that Rogers *five years* after the time that the plaintiff was bound to perform, that is on March 1st, 1850, sold and conveyed the property to the defendant Ogilvie, for what the plaintiff regards as an inadequate consideration. It seems that he suffered five years to elapse without doing any thing in performance of the contract, and he now comes into court with the averment that he is ready and willing to perform, and asks that the conveyance to Ogilvie may be declared void, and set aside, and that Rogers may be required to convey the land to him, the plaintiff, upon receiving the $3019 33 with interest, and all sums that Rogers may have paid for taxes or assessments; or that the land, which is averred to be now worth $10,000, may be sold by order of the court, and after deducting from the proceeds of the sale the amount to which Rogers is entitled, that the residue may be paid to him, the plaintiff.

For the non-performance of a contract, parties have a remedy by an action for damages, and cannot claim in equity a specific performance as a matter of absolute right, but whether it will be decreed or not, is matter resting in the sound discretion of the court in view of all the circumstances.

Such a decree will not be made except in cases where it would be strictly equitable to make it, and the court will give no aid to a party who, being under obligations like the plaintiff here, to perform within a given time, suffers a long period of time to elapse doing nothing on his part, unless he furnishes to the court a reasonable and satisfactory excuse for his delay. "Due diligence" says Lord Manners in Moore v. Blake, (1 *Ball & B.*, 69), "is necessary to call this court into activity, and where it does not exist, a court of equity will not lend its assistance. It always discountenances laches and neglect." To the same effect is the observation of Lord Alvanley in Milward v. the Earl of Thanet, (5 *Ves.* 720, *note b.*), "that a party cannot call upon a court of equity for a specific performance unless he has shown himself ready, desirous, prompt and eager." The case of the plaintiff does not differ, except in the payment of a part of the consideration, from Ballard v. Walker (3 *Johns, Cas.* 60). There the defendant agreed to convey to the plaintiff a lot of land upon a delivery by the plaintiff of a bond and mortgage, properly executed, for the payment of the consideration in two equal instalments, payable in five and six years from the date of the agreement. In about a year after, the defendant conveyed the property to another person, and four years from the date of the agreement, the plaintiff sent to the defendant to·say that though not ready then to perform, he would furnish good security to pay the money by the time it was payable. The defendant, however, refused to perform, on the ground that he had sold the land. A year after, the formal tender of the bond and mortgage was made, but the defendant refused to perform the agreement. In this state of facts, the plaintiff brought his action, but the court gave judgment for the defendant. This seems to have been an action at law, but the principle upon which the law was determined was fully recognized and enforced in equity in Hatch v. Cobb (4 *Johns. Ch.*, 559). See also Watson v. Reid (1 *Russ, & M.*, 236 . Halford v. Boore, (5 *Ves.* 719, *Story Eq. Jur.*, § 776.)

The court will not refuse its aid because the plaintiff has failed to comply with the contract on his part strictly and literally, and there are many cases in which it has given relief

and compelled a specific performance, where the plaintiff could have maintained no action at law by reason of his failure to comply strictly with the terms of the contract. " Courts of Equity," says, Story, J. (*Eq. Juris.* § 776), "have regard to time as far as its respects the good faith and *diligence* of the *parties.* But if circumstances of a reasonable nature have disabled the party from a strict compliance, or if he comes *recenti facto* to ask for a specific performance, the suit is treated with indulgence and generally with favor." " But then" he remarks, " it should be clear, using the language of Lord Alvanley, that he has shown himself ready, desirous, prompt and eager to perform the contract." The only excuse to be gleaned from the complaint in this case for the plaintiff's neglect and delay, is the fact that a suit was pending and is still pending between him and his brother, James Watt, in respect to the release of a lien of a mortgage, originally given by him to his brother, upon the land. The plaintiff's brother filed a bill to have the mortgage foreclosed and the release declared invalid about a year after the plaintiff sold and conveyed this land to the defendant Platt Rogers, with a covenant of warrantee, and it is alleged in the complaint that Rogers became dissatisfied with his purchase in consequence of this suit, and, though protected against the alleged incumbrance by the plaintiff's covenant of warrantee, that he entered into the agreement for the sale of the land to the plaintiff, the specific performance of which the plaintiff now seeks to enforce. But I do not see that the pendency of this suit should be deemed sufficient to excuse the plaintiff's delay. Rogers bought the land originally from the plaintiff with a covenant of warrantee against this alleged incumbrance, and he was not bound to wait for the performance of the contract on the part of the plaintiff, until that suit was determined. As it was, it appears that he waited five years before he sold the property to Ogilvie. It is true that he was a party to that suit, and that if the plaintiff in it should succeed in establishing the validity of the lien, that his title to the land would be affected to the extent of the mortgage. But the plaintiff here was responsible to him upon the covenant of warrantee, and the very object of his entering into the agreement, as admitted by the complaint, was to dispose of the

land to the plaintiff, and thus rid himself of any responsibility or of any questions that might grow out of that suit;—to withdraw himself from the whole matter, leaving it to the two brothers to carry on that litigation. That suit it seems has been going on for fifteen years, and it would be preposterous to say under an agreement like this in which the time for performance on the part of the plaintiff is distinctly specified, that he could be excused from performing until that controversy was settled. The defendant, it is true, has received a part of the consideration, but it does not appear that he has refused to refund it, or that since he treated the contract as rescinded, which he did by selling the land to Ogilvie, that he has been unwilling to give it back again to the plaintiff. For these reasons, I think the plaintiff has not shown a case entitling him to an injunction, and the temporary injunction granted in the first instance is dissolved.

---

## THE UNION BANK OF SANDUSKY a. TORREY.

*New York Superior Court ; Special Term, November,* 1855.

EXECUTION OF COMMISSION TO TAKE TESTIMONY.—RULES OF
EXAMINATION.

On the execution of a commission the parties have a right to appear by counsel.
Cross-interrogatories cannot be withdrawn unless by mutual consent.
A witness cannot shield himself from answering a cross-interrogatory by a reference
to his previous answer to a direct one.

Motion for a re-execution of a commission to examine witnesses.

A commission had issued in this action for the examination of witnesses at Sandusky, Ohio. The parties had united in the commission, and the defendants now applied for a re-execution of it, on the following grounds :

I. That the plaintiff, on the first execution of the commis-